# UNITED STATES DISTRICT COURT
for the
Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Priority Mail parcel # 9405 5362 0624 9302 4253 44 addressed to "MARIE SPOSATO 1905 NE 4TH TER CAPE CORAL FL 33909-2752" | ) ) ) ) ) ) )  Case No. 25MJ3650-AHG |

**APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS**

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-2, incorporated herein by reference.

located in the  Southern  District of  California , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) | Distribution and Possession with Intent to Distribute a Controlled Substance; |
| 21 U.S.C. §843(b) | Unlawful Use of a Communications Facility to Facilitate the Distribution of |
| 21 U.S.C. §846 | a Controlled Substance; Conspiracy to Distribute a Controlled Substance |

The application is based on these facts:
See attached Affidavit of US Postal Inspector David Smith.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*/s/ David Smith*
*Applicant's signature*

David Smith, US Postal Inspector
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by  Telephone  *(specify reliable electronic means)*.

Date: July 1, 2025

*/s/ Allison H. Goddard*
*Judge's signature*

City and state:  San Diego, CA    Hon. Allison H. Goddard, U.S. Magistrate Judge
*Printed name and title*

# ATTACHMENT A-2
# PARCEL TO BE SEARCHED

**Subject Parcel 2**: Priority Mail parcel # 9405 5362 0624 9302 4253 44 addressed to "MARIE SPOSATO 1905 NE 4TH TER CAPE CORAL FL 33909-2752" with the return address of "TIFFANY ELLIOTT 126 7TH ST DEL MAR CA 92014". It was postmarked on June 21, 2025 from ZIP code 92014. **Subject Parcel 2** weighs approximately 11.65 ounces.

The **Subject Parcels** are in the custody of the USPIS in San Diego, California.

# ATTACHMENT B
# ITEMS TO BE SEIZED

The items to be seized from the **Subject Parcels** are:

a. Any controlled substances;
b. United States currency in excess of $100;
c. Money orders that accompany controlled substances; and money orders that (1) appear structured and collectively total over $3,000, or (2) do not list a payee and payor and collectively total over $3,000; and
d. Any documents reflecting ownership or control of the Subject Parcel or the distribution of controlled substances or its proceeds,

which are evidence of violations of Title 21, United States Code, Sections 841(a)(1) (distribution and possession with intent to distribute a controlled substance), 843(b) (unlawful use of a communication facility (including the mails) to facilitate the distribution of a controlled substance), and 846 (conspiracy to distribute a controlled substance).

# AFFIDAVIT FOR SEARCH WARRANT

I, David Smith, being duly sworn, depose and state:

## INTRODUCTION

1. This affidavit is submitted in support of an application for a search warrant for the following **Subject Parcels**:

   a. **Subject Parcel 1**: Priority Mail parcel # 9405 5362 0624 9302 4252 21 addressed to "STEVE MCGRAW 1312 HAZELWOOD ST BORGER TX 79007-2315" with the return address of "MADDIE COLE 928 GLORIETTA BLVD CORONADO CA 92118". It was postmarked on June 21, 2025 from ZIP code 92118. **Subject Parcel 1** weighs approximately 2.8 ounces.

   b. **Subject Parcel 2**: Priority Mail parcel # 9405 5362 0624 9302 4253 44 addressed to "MARIE SPOSATO 1905 NE 4TH TER CAPE CORAL FL 33909-2752" with the return address of "TIFFANY ELLIOTT 126 7TH ST DEL MAR CA 92014". It was postmarked on June 21, 2025 from ZIP code 92014. **Subject Parcel 2** weighs approximately 11.65 ounces.

2. The **Subject Parcels** are in the custody of the United States Postal Inspection Service ("USPIS") in San Diego, Southern District of California.

3. Based on information below, I have probable cause to believe that the **Subject Parcels** contains evidence of a crime, contraband, fruits of crime, and property used in committing a crime, including violations of Title 21, United States Code, Sections 841(a)(1) (distribution and possession with intent to distribute a controlled substance), 843(b) (unlawful use of a communication facility (including the mail) to facilitate the distribution of a controlled substance), and 846 (conspiracy to do the same). The items to be seized from the package are set forth in Attachment B.

4. The facts set forth in this affidavit are based upon my training, personal experience, and information obtained from other law enforcement agents, investigators, and the collective experiences related to me by USPIS inspectors on my team who specialize in investigations relating to the mailing of controlled substances and drug

proceeds. I have not included every fact I know about this investigation. I set forth only facts necessary to establish foundation for the requested warrant. Dates listed below are approximate.

## TRAINING AND EXPERIENCE

5. I am a Federal Agent employed as an inspector by the USPIS. I am an "investigative or law enforcement officer" of the United States within the meaning of 18 U.S.C. 2510(7) and a federal law enforcement officer under Fed. R. Crim. P. 41(a)(2)(C). I am empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in 18 U.S.C. 3061.

6. I have been employed as a Postal Inspector since June 2017. From June 2017 through September 2017, I attended the Basic Postal Inspector Academy. I am a member of the San Diego Contraband Interdiction and Investigations ("CI2") Team. Prior to this assignment, I was assigned to the U.S. Postal Inspection Service's Mail Theft and Violent Crimes team in San Diego, California. I have had formal training in controlled substance investigations, and I have become familiar with the manner in which controlled substances are packaged, marketed, cultivated, manufactured, and consumed. Prior to this position, I was a Border Patrol Agent for 9 years. Over the course of my employment, I have attended several training courses related to narcotics trafficking and drug cartels, identity theft, money laundering, bitcoin and cryptocurrency, the dark web, cell phone investigations, and asset forfeiture.

7. My current duties include investigating violations of the federal Controlled Substance Act and related offenses. I have also had training regarding the investigation of individuals who use the U.S. mail to transport controlled substances and proceeds from their sale, and who use Postal Money Orders to launder the proceeds.

## PROBABLE CAUSE

8. To combat the flow of controlled substances through delivery services, the USPIS has established interdiction programs in areas throughout the United States. Some of these areas, including San Diego and Southern California generally, are common sources

of controlled substances because of the size of the region and/or its proximity to an international border through which controlled substances often flow. The USPIS analyzed parcels mailed through delivery services (including U.S. Postal Service, Federal Express, and United Parcel Service) which were found to contain controlled substances or proceeds of controlled substance sales. This analysis identified characteristics which, in various combinations, often are found in parcels that contain controlled substances or proceeds of controlled substance sales. The characteristics include:

  a. the parcel was mailed from or addressed to a controlled substance source city;
  b. the parcel sender name is unknown at the return address;
  c. the parcel has handwritten address information;
  d. the parcel is mailed from or to a commercial mail receiving agency;
  e. the parcel is addressed from an individual to an individual;[1]
  f. the parcel is wrapped in brown paper and/or heavily taped; and
  g. the ZIP Code from where the parcel is mailed differs from the ZIP Code used in the return address.

9. On or about Thursday, June 26, 2025, I was referred three small flat rate Priority Mail parcels, which included the **Subject Parcels** and one additional parcel (hereafter Stephenson Parcel). The labels for the three parcels were all created on or about June 21, 2025. They were all mailed at the same blue collection box in downtown San Diego, CA on or about June 23, 2025. They were collected by the letter carrier on or about June 23, 2025, at approximately 12:48 PM. Postage for the parcels was generated online, but the method of payment was still undetermined. The tracking numbers were numerically close together, suggesting that they were generated at approximately the same time. All three parcels had different return addresses. USPS employees believed they were suspicious and referred the three parcels to Postal Inspectors for follow-up.

---

[1] In instances when overnight delivery parcels containing controlled substances or proceeds related to controlled substance sales and the package displayed a business or company name, it has usually proven to be a fictitious business or company.

*Affidavit for Search Warrant*                Page 3 of 9

10. On or about June 27, 2025, I attempted to contact the recipients of all three parcels. I was only able to reach John Stephenson of the Stephenson Parcel. The Stephenson parcel displayed USPS tracking number 9405 5362 0624 9302 4252 52. It was addressed to "JOHN STEPHENSON 220 NOTRE DAME DR VALLEJO CA 94589-1899" with a return address of "MAGDALENA WALLACE 441 S SIERRA AVE UNIT 102 SOLANA BEACH CA 92075".

11. Stephenson said that he was expecting some business cards, stickers, or tubing for his plumbing business. He gave me consent to open the parcel. I opened the parcel with Postal Inspector Ron MacAskill. Inside the small flat rate box was a pink envelope, which was sealed. Inside the envelope was a vacuum sealed bag containing a white chalky substance resembling cocaine. The substance field tested positive for cocaine using a TruNarc field testing device and weighed approximately 21.3g (gross weight in the vacuum sealed bag). Stephenson denied purchasing the suspected cocaine.

12. Unable to reach the other recipients and lacking consent to search the **Subject Parcels**, I established probable cause to obtain federal search warrants for the **Subject Parcels**.

13. Based on my knowledge of the parcels, I noted the following:
 a. The **Subject Parcels** were mailed from a controlled substance source city.
 b. The **Subject Parcels** had no contact telephone numbers for addressee or sender.
 c. Postage for the **Subject Parcels** appeared to have been generated online around the same time, based on displayed tracking numbers, but had different return addresses.
 d. The **Subject Parcels** had computer generated labels, but were sent individual to individual.
 e. Return addresses for the **Subject Parcels** were not in the same city as the location of the parcel mailings.

14. In my experience, parcels containing controlled substances often are sent via Express or Priority and are sent individual to individual, rather than to or from a business. Because of the cost of overnight and express delivery, such services are more often used by businesses, and businesses generally use preprinted (not handwritten) labels for a professional appearance. The **Subject Parcels** had computer generated labels and appeared to have been purchased online but were sent individual to individual. The payment method for the postage was unknown. USPS business records showed postage for the **Subject Parcels** and the Stephenson Parcel were printed on or about June 21, 2025, between approximately 9:15 PM and 9:16 PM.

15. In my experience, persons who use the USPS mail system to transmit controlled substances or proceeds frequently omit contact telephone numbers from the shipping label or list a number that is fictitious or otherwise invalid. Shippers or recipients of controlled substances or proceeds often do not want to be contacted by the USPS (or law enforcement posing as USPS workers) if a parcel is not delivered normally, because that suggests the parcel has received abnormal attention. The **Subject Parcels** had no telephone numbers for the return or delivery addresses.

16. The **Subject Parcels** was mailed at a blue collection box on the side of the road in downtown San Diego, CA. The return addresses on the **Subject Parcels** were in Del Mar and Coronado, CA.

17. I reviewed records from CLEAR to conduct a check of the recipient address listed on the **Subject Parcels**. CLEAR is a database and research tool that allows law enforcement to identify victims and suspects through current and historical records, such as public utility records and court records. I was able to associate the delivery names on the **Subject Parcels** with their respective addresses in Texas and Florida. The return names, however, did not associate with their respective addresses in Del Mar and Coronado, CA.

18. On or about June 30, 2025, I met with Border Patrol Agent (BPA) Dennis Boone, a trained K9 handler, and his certified and trained narcotics detection canine, "Cali (BPK9# 211090)", at the United States Border Patrol Station in Chula Vista, CA. BPA

Boone informed me that he and "Cali" (hereinafter referred to as the "canine team") are certified in the detection of concealed humans and the odors of marijuana and its derivatives, cocaine and its derivatives, heroin and its derivatives, methamphetamines and its derivatives, and ecstasy. BPA Boone and "Cali" have been teamed together since July 2021 and were last certified on January 8, 2025. Further, I am aware that "Cali" has successfully identified controlled substances concealed within vehicle, building, and parcels. For these reasons, I believe "Cali" to be reliable in the detection of controlled substance odors.

19. "Cali" is trained to seek out the aromas of controlled substances. When "Cali" encounters such odors and aromas, "Cali" is trained to display an alert or behavior. BPA Boone is trained to handle and direct "Cali", and he is highly skilled at recognizing the alerts or behaviors of "Cali" when "Cali" encounters these trained odors and aromas. The canine team conducted separate exterior examinations of the **Subject Parcels**. After the canine team examined the **Subject Parcels**, BPA Boone told me that "Cali" had alerted to the presence of a trained odor on or in both of the **Subject Parcels**.

20. I know based on my training, experience, and information relayed to me by other members of law enforcement, including law enforcement officers assigned drug detection canines, that the odor of narcotics transfers to other items, such as paper currency. This transfer is temporary and generally occurs when narcotics are recently stored in close proximity with paper currency. I also know based on my training and experience that drug traffickers commonly store narcotics and paper currency together in a secure location, such as a safe. Those who traffic in narcotics and the proceeds of narcotics sales utilizing the U.S. Mail commonly wrap narcotics and the proceeds of narcotics sales in plastic that is heat and vacuum sealed in an attempt to prevent odors from escaping. Drug detection canines may detect the odor of narcotics on paper currency in these situations. Further, based on my training and experience, parcels that are found to contain narcotics or the proceeds of narcotics sales may also contain documents or other materials that provide evidence of the involved parties.

21. In my training and experience, several times, investigators have found money orders in parcels that have the sorts of characteristics above. A money order is a financial instrument that effectively substitutes for cash.

   a. They are paid for in advance at money services businesses (MSBs) like Western Union or the U.S. Postal Service that charge a nominal fee. The money order need not list a payor or payee, so anyone who has a money order without a listed payee may, for example, exchange it for cash at a check cashing business or provide it to another as payment for goods, services, etc.

   b. Within the Postal Service, one money order may have a face value of up to $1,000, and a customer may buy any amount of money orders. But contemporaneous purchases of $3,000 or more in money orders trigger record keeping or reporting requirements. To avoid creating such records, persons engaged in criminal activity who want to buy more than $3,000 in money orders, total, frequently "structure" purchases of the money orders to stay below the $3,000 limit. Structuring methods may include purchasing money orders in amounts under $3,000 at multiple MSBs, having multiple individuals buy money orders in amounts under $3,000 at one MSB, or staggering the purchase of money orders in amounts under $3,000 among several clerks or at different times.

   c. For these reasons, in my experience, numerous money orders in a parcel each below $3,000 but that total more than $3,000—especially, though not always, in the same or round amounts—strongly indicates the money orders are payment for illegal activity. That is especially the case now when there are other, easier ways to transmit funds almost instantaneously and more securely, like payment applications (e.g., PayPal, Venmo, Cash App) or through banks online. Those methods automatically generate transaction records, however, so persons engaged in criminal activity may still ship money orders. Numerous money orders in a parcel that total over $3,000 and do not list a

payee and payor likewise strongly indicate the money orders are payments for illegal activity. Persons who buy and send money orders for lawful purposes generally include that information or at least the payee, because they only want the intended recipient (like an associate, relative, or business) to be able to negotiate the money order for its intended purpose.

    d. In my training and experience, the illegal activity in such cases is almost always drug trafficking. Investigators reviewed cases from 2015 to 2024 when money orders were seized from parcels in this district. The investigations in those cases concluded all but one seizure was related to narcotics or suspected narcotics proceeds.

22. I therefore believe there is probable cause to seize 1) money orders that accompany controlled substances; and 2) money orders that (a) appear structured and collectively total over $3,000, or (b) do not list a payee and payor and collectively total over $3,000.

23. For these reasons, I believe there is probable cause to search the **Subject Parcels** for the items in Attachment B.

### REQUEST FOR SEALING

24. I respectfully request that this Court seal the Applications, Affidavits, and Search Warrants. The investigation is ongoing and currently covert. Premature disclosure of the contents of this affidavit including the basis for the search and law enforcement's interest in the sender and intended recipient may cause those involved to destroy or discard evidence and otherwise jeopardize the investigation.

25. I declare under penalty and perjury the foregoing is true and correct to the best of my knowledge and belief.

_____
David Smith
United States Postal Inspector

*Affidavit for Search Warrant*     Page 8 of 9

Sworn and attested to under oath by telephone, in accordance with Federal Rule of Criminal Procedure 4.1, this 1st day of July, 2025.

*Allison H. Goddard*
_____
Hon. ALLISON H. GODDARD
United States Magistrate Judge